IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Wolfe, *et al*, | * | |
| On behalf of themselves and other members of the general public similarly situated, | * | Case No. 2:18-cv-1698 |
| | * | Judge Algenon L. Marbley |
| Plaintiffs, | * | Magistrate Judge Vascura |
| v. | * | |
| Ohio Mulch Supply, Inc., *et al*, | * | |
| Defendants. | * | |

**JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT**

Representative Plaintiff Jordan Wolfe ("Wolfe" or "Representative Plaintiff") and Defendant Ohio Mulch Supply, Inc. ("OMS"), OM Trucking, LLC, ("OM Trucking") and Defendant Jim Weber, II ("Weber") (collectively, "Defendants") (collectively "Plaintiff" and "Defendants" shall be referred to as the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations with the assistance of a private mediator.[1]

This Joint Motion For Approval Of FLSA Collective Action Settlement. The following documents are submitted for the Court's approval:

Exhibit 1: Confidential Settlement Agreement and Release of Claims with the following Exhibits: 1 – Payments; 2 – Notice of Settlement.

---

[1] The parties are still obtaining all signatures for the settlement agreement.

1

Exhibit A: Proposed Order Granting Approval of FLSA Settlement; and

Exhibit 2: Declaration of Peter Contreras.

## MEMORANDUM IN SUPPORT

I.  **FACTUAL AND PROCEDURAL BACKGROUND.**

    A.    <u>Summary of the Claims and Procedural History</u>.

On December 14, 2018, Representative Plaintiffs Jordan Wolfe and Shawn Bailey filed this case (the "Lawsuit" or the "Action") against Defendants on behalf of themselves and other similarly situated current and former hourly, non-exempt delivery drivers (ECF No. 1 at ¶¶ 6, 11; 29-43; 44-48).

In the Action, Representative Plaintiffs allege that Defendants failed to pay delivery drivers overtime premium for all hours worked in excess of 40 in a workweek in violation of the Fair Labor Standards Act, § 201, *et seq.* ("FLSA").  Specifically, Representative Plaintiffs allege that Defendants violated the FLSA by misclassifying delivery drivers as exempt from overtime and not paying them an overtime premium despite the drivers performing overtime work. (ECF No. 1 at 6, 11; 29-43; 44-48). Defendants deny these allegations and asserts that they properly paid their drivers, including Representative Plaintiffs, for all hours worked.

On February 22, 2019, Plaintiffs sought leave to amend their complaint to additionally include drivers who were paid an hourly rate for delivering rather than flat rate per delivery as initially alleged. (ECF No. 10 and 10-1). On April 1, 2019, the Parties filed a Motion and Stipulation of Conditional Certification pursuant to 29 U.S.C. §216(b) ("Joint Stipulation"). (ECF No. 16).  On April 3, 2019, the Court granted the Parties' Joint Stipulation.  (ECF No. 17).

Thereafter, notice was issued to approximately 325 current or former employees. (Contreras Decl. ¶ 10). Following the notice period, 52 employees filed consents to join the collective action ("Opt-In Plaintiffs"), including Representative Plaintiffs (collectively Representative Plaintiffs and all Opt-In Plaintiffs hereinafter referred to as "Plaintiffs"). (*Id.*).

The Parties mediated this case with mediator Robert D. Erney on June 18, 2021. Prior to the mediation, Defendants provided compensation records and delivery records for Representative Plaintiffs and other opt-ins that Plaintiffs contend are similarly situated. Plaintiffs' Counsel performed a damages analysis using data provided by Defendants together with information gathered through numerous discussions with Representative Plaintiffs and Opt-Ins plaintiffs. After a full day of mediation, the Parties were able to agree to a settlement of Plaintiffs' claims. (Contreras Decl. ¶ 19).

      C.      <u>Summary of the Key Settlement Terms</u>.

The total settlement amount is $187,500.00. This amount includes: (a) all individual settlement payments to 49 FLSA Collective Class Members[2]; (b) service awards of $5,000 to Representative Plaintiff Wolfe for his services in bringing and prosecuting this Action and $1,500 to each of Representative Plaintiffs Bailey, Badgley, and Carter; (c) Plaintiffs' Counsel's attorney fees and litigation expenses; (d) the cost of settlement administration; and (e) $2,500 payment to payroll tax obligations. (Contreras Decl. ¶ 23).[3] FLSA Collective Class Members will receive

---

[2] While 52 consents to join were filed, it was later determined that two (2) employees improperly received notice as they did not work as drivers for Defendants. One opt-in, Katrice Harper, additionally withdrew her consent to join on June 21, 2021 (ECF No. 62). Accordingly, forty-nine (49) opt-ins are receiving payments pursuant to this agreement.
[3] Following mediation, the parties disagreed over whether Defendants' share of the payroll withholdings was included in the Global Settlement Amount or would be paid separately by Defendants in addition to the Global Settlement Amount based on what was discussed and agreed to during mediation. The parties participated in an additional

their settlement payment based on a proportional damages analysis and calculation performed by Plaintiffs' counsel and agreed to by Defendants.[4]

The Parties dispute both whether the Plaintiffs were misclassified as exempt as well as how much overtime work was performed. The individual settlement payments as provided in Exhibit 1 to the agreement presently reflect that FLSA Collective Class Members will receive 1.25 times (or 125%) their calculated overtime damages based on actual overtime damages for each workweek for hourly delivery drivers and estimates of one and one-quarter hours per delivery for flat rate drivers whose daily/weekly hours were not recorded or tracked. This type of allocation is commonly used in collective action settlements.  (Contreras Decl. ¶ 25). The FLSA Collective Class Members will receive notice of the settlement as provided in Exhibit 2 to the agreement.

In exchange for the total settlement amount payment and other consideration provided for in the Agreement, this Lawsuit will be dismissed with prejudice, and the Representative Plaintiffs and Opt-In Plaintiffs will release Defendants from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, in the Lawsuit.

## II. PROPRIETY OF APPROVAL OF THE SETTLEMENT.

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A. The Seven-Factor Standard is Satisfied.

---

conference with the mediator during which Plaintiffs agreed that $2,500 of Defendants' payroll withholdings will be paid from the Global Settlement Amount. *See* Settlement Agreement at 1(d).
[4] *See* **Exhibit 1** to Settlement Agreement.

4

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, which are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)), *Crawford*, 2008 WL 4724499 at *3.

The settlement in this Action satisfies each of these elements.

1. *No Indicia of Fraud or Collusion Exists.*

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 WL 4673163, at *2 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors*

5

*Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). The Agreement was achieved only after arm's-length and good faith negotiations between the Parties, with the assistance of a neutral mediator. (Contreras Decl. ¶ 19). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

        2.    *The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval*.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

If this Action had not settled, the Parties would be required to engage in costly litigation, such as briefing on conditional certification, formal written discovery, depositions, dispositive motions, trial, and potential appeals. The Settlement, on the other hand, provides substantial relief to the FLSA Collective Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Contreras Decl. ¶ 21).

        3.    *Investigation Was Sufficient to Allow the Parties to Act Intelligently*.

The Parties engaged in substantial investigation and analysis prior to negotiating the Settlement. Specifically, Defendants produced all necessary payroll information and delivery documentation for the FLSA Collective Class Members, documents that exceeded Ten Thousand pages in total (10,000). Plaintiffs' Counsel performed a damages analysis using data provided by

6

Defendants together with information gathered through a substantial number of discussions with Plaintiffs. (Contreras Decl. ¶ 15).

In addition, the Parties assessed their potential risk of loss. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

4.  *The Risks of Litigation Favor Approval.*

The settlement represents a compromise of disputed claims. Specifically, Representative Plaintiffs allege that they and other drivers, both hourly and flat rate, were misclassified and not properly paid overtime compensation for the overtime work they performed. On the other hand, Defendants claim that they have fully compensated their employees for all time worked and that the drivers were exempt from overtime wages. (Contreras Decl. ¶ 21, 24).

The Parties also disagree about whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, whether liquidated damages are appropriate, and whether the claims alleged can proceed collectively or individually. (*Id.*).

Accordingly, if this Action had not settled, it is possible that there would be no recovery for the FLSA Collective Class Members at all.

5.  *The Opinion of Plaintiffs' Counsel Favor Approval.*

Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and have vigorously representative the interests of the FLSA Collective Class Members. Importantly, Plaintiffs' Counsel opined that the settlement is fair, reasonable, adequate, and in the best interests of the Plaintiffs. *See, Wright v. Premier Courier,*

*Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (Contreras Decl. ¶ 21). "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright*, 2018 WL 3966253, at *5. Accordingly, this factor favors approval of the settlement.

    6.  *The Public Interest*.

"Public policy generally favors settlement of class action lawsuits." *Wright*, 2018 WL 3966253, at *5 (quoting *Hainey v. Parrott*, 617 F. Supp.2d 668, 679 (S.D. Ohio 2007)). Like in *Wright*, "the settlement confers immediate benefits on the Eligible Settlement Participants, avoids the risks and expense in further litigation, and conserves judicial resources." *Id.* Thus, as in *Wright*, the Court should find that this factor supports approval of the Settlement.

    B.  <u>The Settlement Distributions Are Fair, Reasonable and Adequate</u>.

In addition to evaluating the factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *6 (S.D. Ohio Sep. 9, 2016) (citations omitted).

    1.  *The Individual Payments are Reasonable and Adequate*.

As part of their pre-mediation evaluation, Plaintiffs' Counsel discussed the duties performed and hours worked by Plaintiffs. Damages were calculated based on the recorded overtime hours worked by hourly drivers and reasonable estimates of hours worked by flat rate / per delivery drivers whose hours were not recorded. The individual settlement payments reflect 1.25 times (or 125%) the unpaid overtime damages the FLSA Collective Class Members were owed based on recorded hours worked and estimating flat rate drivers averaged one and one-quarter (1.25) hours per delivery. This amount of time was settled upon as reasonable based on the

8

information learned before and during mediation, settlement discussions, and informal discovery and based upon numerous interviews with opt-in plaintiffs. (Contreras Decl. ¶ 25). This recovery is not just fair and reasonable, it is exceptional. *See*, *Shane Group Inc. v. Blue Cross Blue Shield of Michigan*, 833 Fed.Appx. 430, 431, (6th Cir., Jan. 14, 2021) (holding that 32% of alleged damages was a substantial recovery for the class).

All individual payments have been calculated based on the total number of workweeks worked for Defendants and deliveries made for flat rate drivers, and the actual hours worked for the hourly drivers whose hours were recorded (Contreras Decl. ¶ 25). As such, each FLSA Collective Class Member will have the opportunity to obtain compensation for alleged unpaid wages that are proportional to the amount of overtime hours worked while employed by Defendants within the period of time covered by the settlement and the total deliveries made during employment.

> 2. *Representative Plaintiff's Service Award is Proper and Reasonable.*

The Agreement provides for a service awards of totaling $9,500 to four (4) Representative Plaintiffs, in addition to their individual payments. (Contreras Decl. ¶ 27). Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at *8 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). *See also*, *Shane Group, Inc.*, 833 Fed.Appx. at 431. Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ganci*, 2019 WL 6485159, at *8 (quoting

9

*Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010)).

Here, the Representative Plaintiffs contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case and reach a settlement of this matter. In addition, Representative Plaintiffs participated in the mediation preparation and mediation, and were instrumental in the prosecution of this case. (Contreras Decl. ¶ 27).

        3.     *The Attorney Fees to Plaintiffs' Counsel Are Proper and Reasonable.*

After the Court has confirmed that the terms of settlement are fair to the FLSA Collective Class Members, it may review the Agreement as to the provision of fees and litigation expenses to Plaintiffs' Counsel.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The Agreement provides a payment of attorneys' fees to Plaintiffs' Counsel in the amount of one-third of the total settlement amount, or $62,500. A one-third fee award is "typical for attorney's fees in common fund, FLSA collective actions in this District…" *Croskey v. Hogan*

*Services, Inc.*, No. 2:20-cv-3062, 2021 WL 3012278 at *2 (S.D. Ohio July 15, 2021) (Watson, J) citing *Hebert v. Chesapeake Operating, Inc.*, Case No. 2:17-cv-852, 2019 WL 4574509 at *5-8 (S.D. Ohio Sept. 20, 2019) (J. Morrison). This "is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, *5 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 WL 5023950 at *4 (N.D. Ohio July 27, 2018)); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-355, 2021 WL 1966062, *5-7 (S.D. Ohio May 17, 2021).

"Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246 at *5 (S.D. Ohio Feb. 16, 2021). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class[]." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 762 (S.D. Ohio 2007). "[W]hile the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure." *Id.* Thus, the percentage method is preferred. *Arp. v. Hohla & Wyss Enterprises, LLC*, 2020 WL 6498956 at *6 (S.D. Ohio Nov. 5, 2020); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *22, 2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) (Black, J.) (internal citations omitted); *Feiertag v. DDP Holdings, LLC*, No. 14-cv-2643, 2016 U.S. Dist. LEXIS 122297, at *20–21, 2016 WL 4271208 (S.D. Ohio Sep. 9, 2016); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *16, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018); *Carr v. Bob Evans Farms*, No. 1:17-CV-1875,

11

2018 U.S. Dist. LEXIS 228221, at *10-11 (N.D. Ohio July 27, 2018); *see also, Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, at *6 (N.D. Ohio May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'") (citation omitted). This Court has awarded a one-third fee in similar cases. *See Charles Fravel v. General Mills Operations, LLC*, Case No. 2:20-cv-01094 (S.D. Ohio Oct. 28, 2020); *Baker v. Collins Mobile, LLC*, 2:22-cv-01996 (S.D. Ohio Dec. 16, 2020); *Bailey v. Black Tie Management Company*, 2:19-cv-1677 (S.D. Ohio Aug. 12, 2020); *Mulledy v. American Air Furnace Company*, 2:20-cv-5185 (S.D. Ohio April 13, 2021).

Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci*, 2019 WL 6485159, at *8 (further citation omitted); *see also, Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *15 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Finally, courts in this district acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg*, 2019 WL 6310376, *3. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiff's counsel for their prosecution of this case, and advances the public's interests in

12

rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

          4.    *The Court Should Authorize Reimbursement to Plaintiffs' Counsel of Their Out-of-Pocket Expenses Incurred In This Case.*

Plaintiffs' Counsel should also be reimbursed their litigation expenses, which as of the date of this Joint Motion are $3,310.31.

"Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 WL 6310376, *7. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.* Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel.

### III. **CONCLUSION**.

The Parties submit that this settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Approval of FLSA Settlement; (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service payments; (4) approve payment

to the settlement administrator to administer the settlement; and (5) retain jurisdiction to enforce the settlement if necessary.

Respectfully submitted,

| **COFFMAN LEGAL, LLC**<br><br>/s/ Matthew J.P. Coffman<br>Matthew J.P. Coffman (0085586)<br>1550 Old Henderson Road<br>Suite 126<br>Columbus, Ohio 43220<br>Telephone: (614) 949-1181<br>Facsimile: (614) 386-9964<br>Email: mcoffman@mcoffmanlegal.com<br><br><br>**CONTRERAS LAW, LLC**<br><br>/s/ Peter A. Contreras<br>Peter Contreras (0087530)<br>1550 Old Henderson Road<br>Suite 126<br>Columbus, Ohio 43220<br>Phone: 614-787-4878<br>Fax: 614-957-7515<br>Email: peter.contreras@contrerasfirm.com<br><br>*Attorneys for Named Plaintiff and similarly situated employees* | /s/ Jan E. Hensel<br>Jan E. Hensel<br>Dinsmore & Shohl LLP<br>191 West Nationwide Boulevard, Suite 300<br>Columbus, Ohio 43215<br>Tel.: (614) 227-4267<br>Fax: (614) 628-6890<br>jan.hensel@dinsmore.com<br><br>Zachary J. Weber<br>Dinsmore & Shohl LLP<br>255 E. Fifth Street, Suite 1900<br>Cincinnati, Ohio 45202<br>Tel: (513) 832-5348<br>Fax: (513) 977-8141<br>zachary.weber@dinsmore.com<br><br>*Attorneys for Defendants* |
|---|---|
| | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of October 2021, a true and accurate copy of the forgoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

22970775.1

*/s/ Peter A. Contreras*
Peter Contreras (0087530)

15

22970775.1